UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 08-4846(DSD/JJK)

Richard Rahlf, Frank Stelter
and Scott Johnson,

       Plaintiffs,

v.                                      **ORDER**

Mo-Tech Corporation, Inc.,

       Defendant.

      James H. Kaster, Esq., Sofia B. Andersson-Stern, Esq. and
      Nichols, Kaster PLLP, 80 South Eighth Street, Suite 4600,
      Minneapolis, MN 55402, counsel for plaintiffs.

      Alan W. Weinblatt, Esq., Jane L. Prince, Esq., and
      Weinblatt & Gaylord PLC, 111 East Kellogg Boulevard,
      Suite 300, St. Paul, MN 55101, counsel for defendant.


This matter is before the court on defendant Mo-Tech Corporation's ("Mo-Tech") motion for summary judgment. After a review of the file, record and proceedings herein, and for the following reasons, the court grants Mo-Tech's motion.

**BACKGROUND**

This employment dispute arises out of Mo-Tech's October 1, 2007, termination of plaintiffs Scott Johnson ("Johnson"), Richard Rahlf ("Rahlf") and Frank Stelter ("Stelter"). Mo-Tech is a privately-held Minnesota corporation that manufactures molds for consumer products and the automotive and medical industries. (Nielsen Dep. 17-19.) Johnson, Rahlf and Stelter began working at

Mo-Tech as mold makers in 1990, 1992 and 1998, respectively. While at Mo-Tech, plaintiffs received positive performance reviews and were ranked among the most experienced and highest paid mold makers. (Kaster Aff. Exs. 3-6.)

In the summer of 2007, the President of Mo-Tech, Tom Nielsen ("Nielsen"), determined that a reduction in force ("RIF") was necessary due to an alleged lack of work. (Nielsen Aff. ¶ 6.) Nielsen met with Operations Manager Tom Pickar and Tooling Manager Tim Pickar throughout September 2007 to assess the number of mold makers to lay off. (Id. ¶ 11; Nielsen Dep. 84-85.) The three men ranked eight of Mo-Tech's eleven Class A mold makers based upon their efficiency, reliability and ability to operate computer numerical control ("CNC") machines.[1] (Nielsen Aff. ¶ 13.) Johnson, Stelter and Rahlf received the lowest rankings and were selected for termination. (Id. ¶¶ 17-19; Nielsen Dep. 84.)

On August 6, 2008, plaintiffs filed a two-count complaint against Mo-Tech, alleging age discrimination in violation of the Age Discrimination in Employment Act ("ADEA") and the Minnesota Human Rights Act ("MHRA"). At the time, Johnson was forty-two years old and Rahlf and Stelter were fifty years old. (Compl. ¶¶ 10, 20, 29.) The court now considers Mo-Tech's May 20, 2009, motion for summary judgment.

---

[1] The three unranked Class A mold makers performed different duties than the ranked group. (Nielsen Aff. ¶ 15.)

**DISCUSSION**

I.  **Summary Judgment Standard**

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is material only when its resolution affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. See id. at 252.

On a motion for summary judgment, the court views all evidence and inferences in a light most favorable to the nonmoving party. See id. at 255. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings but must set forth specific facts sufficient to raise a genuine issue for trial. See Celotex, 477 U.S. at 324. Moreover, if a plaintiff cannot support each essential element of his claim, the court must grant summary judgment because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. Id. at 322-23.

## II. Age Discrimination

The ADEA and MHRA prohibit employers from discharging an employee because of the individual's age. See 29 U.S.C. § 623(a); Minn. Stat. § 363A.08, subdiv. 2. "A plaintiff may establish [a] claim of intentional age discrimination through either direct evidence or indirect evidence." King v. United States, 553 F.3d 1156, 1160 (8th Cir. 2009) (citation omitted). In cases involving indirect evidence, as here, the court has traditionally applied the familiar burden-shifting analysis of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).[2] See King, 553 F.3d at 1160. Mo-Tech argues, however, that the McDonnell Douglas analysis no longer applies due to the Supreme Court's recent decision in Gross v. FBL Financial Services, Inc., 129 S. Ct. 2343 (2009).

In Gross, the Supreme Court evaluated "whether the burden of persuasion ever shifts to the party defending an alleged mixed-motives discrimination claim brought under the ADEA." Gross, 129 S. Ct. at 2348. The Court held that the analysis set forth in Price Waterhouse v. Hopkins, 490 U.S. 228, 258 (1989) (plurality opinion), for Title VII cases does not apply to mixed-motive discrimination cases under the ADEA. Gross, 129 S. Ct. at 2349. According to the Court, the ADEA mandates that "[t]he burden of persuasion does not shift to the employer to show that it would

---

[2] The court analyzes MHRA age discrimination claims under the same framework. See Ramlet v. E.F. Johnson, 507 F.3d 1149, 1152 (8th Cir. 2007).

4

have taken the [adverse employment] action regardless of age, even when a plaintiff has produced some evidence that age was one motivating factor in that decision." Id. at 2352. Rather, in mixed-motive cases, the plaintiff bears the burden of proving by the preponderance of the evidence "that age was the 'but-for' cause of the challenged employer decision." Id. at 2351 (citation omitted).

Here, Mo-Tech argues that Gross's holding extends to ADEA disparate-treatment claims that rely on indirect evidence. The Gross Court, however, stated that it "has not definitively decided whether the evidentiary framework of McDonnell Douglas ... utilized in Title VII cases is appropriate in the ADEA context." Id. at 2349 n.2 (citation omitted). The Eighth Circuit has not decided this issue. Nevertheless, courts have continued to apply McDonnell Douglas to ADEA disparate-treatment cases involving indirect evidence after Gross. See Roberts v. USCC Payroll Corp., 635 F. Supp. 2d 948, 962 n.2 (N.D. Iowa 2009); Woehl v. Hy-Vee, Inc., 637 F. Supp. 2d 645, 651 (S.D. Iowa 2009); Schott v. Care Initiatives, No. 08-4068, 2009 WL 3297290, at *5 (N.D. Iowa Oct. 15, 2009); Healy v. Buhrs Americas, Inc., No. 08-304, 2009 WL 3164771, at *4-5 (D. Minn. Sept. 29, 2009); Kolar v. Chamness Tech., Inc., No. 08-3244, 2009 WL 3157376, at *2-3 (D. Neb. Sept. 28, 2009); Jackson v. Lakewinds Natural Foods, No. 08-398, 2009 WL 2255286, at *3 n.4 (D. Minn. July 28, 2009). But see Clark v. Matthews Int'l Corp., No.

5

07-2027, 2009 WL 3680771, at *12 (E.D. Mo. Oct. 30, 2009) (applying Gross's "but-for" standard to plaintiff's ADEA-RIF disparate treatment claim). In this case, both parties apply the McDonnell Douglas standard in their memoranda. See Woehl, 637 F. Supp. 2d at 651 (using McDonnell Douglas when parties assumed that analysis would apply). Therefore, in light of precedent and the parties' submissions, the court uses McDonnell Douglas to analyze plaintiffs' claims.[3]

Under the McDonnell Douglas framework, a plaintiff must first establish a prima facie case of age discrimination. See Ward v. Int'l Paper Co., 509 F.3d 457, 460 (8th Cir. 2007). The burden then shifts to the defendant to offer a legitimate, nondiscriminatory reason for its conduct. Id. If the defendant satisfies its burden, the plaintiff must show that the proffered reason was pretext for unlawful discrimination. Id.

**A. Prima Facie Case**

To establish a prima facie case of disparate treatment where there has been a RIF, plaintiffs must show that they are (1) over 40 years old; (2) met the applicable job qualifications; (3) suffered an adverse employment action; and that (4) some additional evidence demonstrates that age was a factor in Mo-Tech's

---

[3] The court notes that even if Gross applied, summary judgment in favor of Mo-Tech would still be warranted. Plaintiffs have not shown by a preponderance of the evidence that a genuine issue of material fact exists as to whether age was the "but-for" cause of their termination.

6

action. Id. (citation omitted). In this case, the first and third factors are uncontested.

### 1. Applicable Job Qualifications

Mo-Tech contends that it required its employees to operate CNC machines. (Nielsen Aff. ¶ 20.) While Mo-Tech acknowledges that Rahlf possessed manual mold-making skills, it argues that Rahlf lacked the ability to operate CNC machines.[4]

In response, Rahlf argues that he was a highly qualified mold maker. The record indicates that Rahlf obtained a two-year degree in tool and die mold making in 1977. (Rahlf Dep. 8.) Mo-Tech consistently rated Rahlf as a "Class A" mold maker - the most advanced class at Mo-Tech - and trained him to be a manager, a position he held for over ten years. (Id. at 58; Kaster Aff. Ex. 3; Nielsen Dep. 30-31, 93-94.) In a performance evaluation conducted before Rahlf's termination, Mo-Tech gave him an "outstanding" mark for "consistently produc[ing] high quality work" and an overall performance rating of "average." (Kaster Aff. Ex. 3 at 58-59.)

Throughout his tenure at Mo-Tech, Rahlf worked primarily on manually operated machines. Rahlf argues that despite Mo-Tech's claims regarding the importance of CNC technology, a significant portion of its work continued to require manual labor. (Rahlf Dep.

---

[4] Mo-Tech concedes that Johnson and Stelter met its job qualifications.

7

36; Johnson Dep. 51; Tom Pickar Dep. 20.) Furthermore, while Rahlf was willing to learn CNC mold making, he alleges that Mo-Tech neither asked nor required him to do so. (Rahlf Dep. 98-99.) Rahlf reportedly sought and received informal CNC training from co-workers, and inquired about further instruction from Mo-Tech in April 2007. (Id. at 100, 104.) According to Rahlf, Mo-Tech never informed him that CNC skills were necessary to maintain his job. (Id. at 98-99.)

Viewing this evidence in a light most favorable to Rahlf, the court determines that a reasonable jury could find that Rahlf met Mo-Tech's job qualifications. Even assuming, however, that Rahlf could establish a prima facie case of age discrimination, summary judgment is warranted on his claims because he cannot establish pretext, as detailed below.

### 2. Age as a Factor in Employment Decision

Mo-Tech also argues that plaintiffs have not demonstrated that age was a factor in the layoffs. The court disagrees. Rather, evidence provided by plaintiffs indicates that they were the oldest full-time mold makers at Mo-Tech when they were terminated. (Kaster Aff. Ex. 11.) This evidence alone satisfies the fourth element of a RIF prima facie case. See Lewis v. Aerospace Cmty. Credit Union, 114 F.3d 745, 748 (8th Cir. 1997) (age was a motivating factor in RIF when terminated employee was only employee over fifty); cf. Chambers v. Metro. Prop. & Cas. Ins. Co., 351 F.3d

848, 856 (8th Cir. 2003) (fourth factor may be established through statistical evidence). Therefore, the court next considers Mo-Tech's proffered reason for its conduct.

**B. Legitimate Reason**

According to Mo-Tech, the RIF was an economically motivated business decision. Mo-Tech asserts that by September 2007, it had lost several major customers and no longer required as many Class A mold makers due to its decreased workload. (Nielsen Aff. ¶¶ 5-6.) Among the customers Mo-Tech had lost were Water Gremlin, Ecowater and Entegris, three companies whose work did not require use of CNC machines. (Id. ¶ 18.) To meet the needs of its remaining customers, Mo-Tech chose to retain those mold makers "who did the highest quality and most efficient work using CNC mold making machines." (Id. ¶ 6.) Mo-Tech decided to lay off plaintiffs after its ranking results indicated they were the least adept at CNC mold making.

The court determines that Mo-Tech has set forth a legitimate, nondiscriminatory justification for plaintiffs' termination. Therefore, the burden shifts back to plaintiffs to show that Mo-Tech's explanation is pretext for age discrimination.

**C. Pretext**

"When an employer articulates a nondiscriminatory reason for an employee's discharge ... 'the factual inquiry proceeds to a new level of specificity.'" Dammen v. UniMed Med. Ctr., 236 F.3d 978,

9

981 (8th Cir. 2001) (quoting U.S. Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711, 715 (1983)). While plaintiffs only needed to make a minimal showing to establish a prima facie case, "more substantial evidence of discrimination is required to prove pretext," because the court views such evidence in light of Mo-Tech's legitimate, non-discriminatory explanation. See Jones v. United Parcel Serv., Inc., 461 F.3d 982, 992 (8th Cir. 2006) (citation omitted). To succeed at this stage of the analysis, plaintiffs must prove that age discrimination "was a determinative factor" in Mo-Tech's decision to eliminate their positions. Id.

Plaintiffs first argue that the RIF was unnecessary and pretextual because Mo-Tech hired five new employees after October 2007 and its sales grew by over eighteen percent from 2006 to 2008. (Kaster Aff. Exs. 7-9; Tom Pickar Dep. 51-52; Nielsen Aff. ¶ 27.) Plaintiffs' arguments, however, amount to an attack on Mo-Tech's business and personnel decisions. It is well-established that the court does not "sit as a 'super-personnel' department to second guess the wisdom of a business's personnel decisions." Evers v. Alliant Techsystems, Inc., 241 F.3d 948, 957 (8th Cir. 2001). Furthermore, "when a company exercises its business judgment in deciding to reduce its work force, 'it need not provide evidence of financial distress to make it a "legitimate" RIF.'" Regel v. K-

10

Mart Corp., 190 F.3d 876, 880 (8th Cir. 1999) (quoting Hardin v. Hussmann Corp., 45 F.3d 262, 265 (8th Cir. 1995)).  Therefore, these arguments do not establish pretext.

Plaintiffs next argue that Mo-Tech's justification for including them in the RIF is pretextual because, prior to their termination, Mo-Tech attributed little importance to CNC skills. For instance, plaintiffs claim that Mo-Tech made no effort to train them on CNC machines and never informed them that CNC skills were necessary to keep their jobs.  (Tom Pickar Dep. 62-63.) Furthermore, despite plaintiffs' alleged lack of competency in CNC mold making, Mo-Tech consistently gave them high marks on their performance evaluations and ranked them as "Class A" mold makers. (Kaster Aff. Exs. 3-6.)

It is not unlawful, however, "for an employer to make 'employment decisions based upon poor job performance, erroneous evaluations, personal conflicts between employees, or even unsound business practices,' as long as these decisions are not the result of discrimination based on an employee's membership in a protected class." Evers, 241 F.3d at 959 (quoting Hill v. St. Louis Univ., 123 F.3d 1114, 1120 (8th Cir. 2007)); see also Bashara v. Black Hills Corp., 26 F.3d 820, 825 (8th Cir. 1994) (absence of objective criteria not probative of discriminatory animus in RIF).  Moreover, plaintiffs cannot merely discredit Mo-Tech's proffered reason for its decision. See Hutson v. McDonnell Douglas Corp., 63 F.3d 771,

11

777 (8th Cir. 1995) (citations omitted). Rather, plaintiffs must also produce evidence indicating that discrimination was the true reason for Mo-Tech's actions. Id. Here, plaintiffs have offered no affirmative evidence establishing that Mo-Tech's ranking process or termination decision was based on employee age. See Evers, 241 F.3d at 959 (requiring affirmative evidence that adverse employment decision was based on age); Walton v. McDonnell Douglas Corp., 167 F.3d 423, 428 (8th Cir. 1999) (plaintiff "must present affirmative evidence [of age discrimination,] not simply contend that a jury might disbelieve [defendant's] evidence."). Accordingly, plaintiffs cannot establish pretext, and the court determines that summary judgment is warranted on plaintiffs' claims.

## CONCLUSION

Accordingly, based on the above, **IT IS HEREBY ORDERED** that defendant's motion for summary judgment [Doc. No. 21] is granted.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Dated: December 15, 2009

s/David S. Doty
David S. Doty, Judge
United States District Court